# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 2:11-ML-02265-MRP (MANx) |
| | **OMNIBUS ORDER RE MOTIONS TO DISMISS** |
| PUTNAM BANK, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:11-cv-04698-MRP (MANx) |
| Plaintiff, | |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION, *et al.* | |
| Defendants. | |
| BANKERS INSURANCE COMPANY, *et al.*, | Case No. 2:11-cv-07152-MRP (MANx) |
| Plaintiffs, | |
| v. | |
| COUNTRYWIDE FINANCIAL CORPORATION, *et al.* | |
| Defendants. | |

STERLING FEDERAL BANK, F.S.B,

Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION, *et al.*

Defendants.

Case No. 2:11-cv-07163-MRP (MANx)

AMERICAN FIDELITY ASSURANCE COMPANY,

Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION, *et al.*

Defendants.

Case No. 2:11-cv-07167-MRP (MANx)

SEALINK FUNDING LIMITED,

Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION, *et al.*

Defendants.

Case No. 2:11-cv-08896-MRP (MANx)

## I.   INTRODUCTION & BACKGROUND

The Court is presently overseeing Multidistrict Litigation No. 2265, captioned *In Re Countrywide Financial Corp. Mortgage-Backed Securities Litigation* ("the MDL").  This omnibus order concerns threshold questions of whether five actions are barred on grounds of standing, jurisdiction, or timeliness.[1]  Four of the five cases are part of the MDL; *Putnam* was transferred pursuant to 28 U.S.C. § 1404(a).  The cases vary in their particulars, but each plaintiff purchased residential mortgage-backed securities ("RMBS") in offerings structured and sold by several of the defendants.  The plaintiffs argue that Countrywide Financial Corporation ("CFC") and its subsidiaries misrepresented the quality of the underlying loans in the RMBS Certificates[2] that plaintiffs purchased.  Some plaintiffs allege that Countrywide's former officers and directors are liable under control person, aiding and abetting, or statutory theories.  All plaintiffs allege that Bank of America and related entities are liable under successor liability theories.

---

[1] The five actions are *Putnam Bank v. Countrywide Fin. Corp.*, 11-CV-04698-MRP (MANx) ("*Putnam*"), *Bankers Ins. Co. v. Countrywide Fin. Corp.*, 11-CV-007152-MRP (MANx) ("*Bankers*"), *Sterling Federal Bank, F.S.B. v. Countrywide Fin. Corp.*, 11-CV-07163-MRP (MANx) ("*Sterling*"), *American Fidelity Assurance Co. v. Countrywide Fin. Corp.*, 11-CV-07167-MRP (MANx) ("*American Fidelity*"), and *Sealink Funding Ltd. v. Countrywide Fin. Corp.*, 11-CV-08896-MRP (MANx) ("*Sealink*").

[2] A Certificate is a document that shows ownership of a mortgage-backed security issued pursuant to a registration statement and prospectus supplement in a public offering.  Each Certificate represents a particular tranche within an offering.  Because "Certificate" refers to the document evidencing ownership of a specific tranche, the Court uses the terms "tranche" and "Certificate" somewhat interchangeably.  An Offering refers to the process by which the Certificates were sold to Plaintiffs.  The Offering Documents refer to the Registration Statements, Prospectuses and Prospectus Supplements, Term Sheets, and other written materials pursuant to which the Certificates were offered.

At the Court's direction, the various defendants ("Defendants")[3] filed consolidated motions to dismiss that addressed only issues of standing, timeliness, and jurisdiction. Those issues were fully briefed and the Court heard extensive oral argument on February 13 and 14, 2012.[4] The Court decides as follows.

## II.   LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

In general, the Court will apply Ninth Circuit law to federal claims and will apply the state law of the transferor forum, including the transferor forum's choice-of-law rules, to state law claims. *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486,

---

[3] When used in the Introduction or Conclusion, "Defendants" refers to all parties who are defendants in any of the five actions addressed by this omnibus order. When used in an individual section, "Defendants" refers to all parties who are defendants in that particular case.

[4] These cases were briefed and argued in coordination with two other cases, *Western and Southern Life Ins. Co. v. Countrywide Fin. Corp.*, 11-CV-07166-MRP (MANx) ("*Western and Southern*") and *National Integrity Life Ins. Co. v. Countrywide Fin. Corp.*, 11-CV-09889-MRP (MANx) ("*National Integrity*"). Those cases present several unique issues that the Court will address in a separate order.

1492 (9th Cir. 1985).  More detailed choice-of-law analysis is performed on a case-by-case basis below.

### III.   PUTNAM

Plaintiff Putnam Bank ("Putnam") filed a putative class action on January 27, 2011.[5]  ECF No. 1.[6]  Putnam purchased eight RMBS Certificates and purports to represent a class of all persons who purchased any tranche within the same Offering as one of the Certificates that Putnam purchased.  Putnam Complaint ¶ 1. Putnam alleges violations of the Securities Act, the Exchange Act, and the Connecticut Uniform Securities Act ("CUSA").  *Id.*

### A. PUTNAM'S SECURITIES ACT CLAIMS ARE TIME-BARRED

Section 13 of the Securities Act includes a three-year period of repose that begins to run on either the date that the security was "bona fide offered to the public" (Section 11 claims) or the date of the sale (Section 12(a)(2) claims).  15 U.S.C. § 77m.  Each of the eight RMBS at issue in this case were offered to the public and purchased by Putnam before January 27, 2008.  Putnam Complaint ¶ 15; CW Mot., App. 8, ECF No. 168.  Putnam's claims are therefore time-barred unless Putnam asserts some basis for tolling.

Putnam argues that its Securities Act claims are tolled under the doctrine of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*").  Putnam Opp. at 14.  In *American Pipe*, a putative class action was filed in district court, and the district court judge declined to certify it as a class action.

---

[5] Putnam alleges that it was part of the *Maine State* action and then "involuntarily excluded" from that action.  Putnam Complaint at ¶ 113.  This raises the question of whether Putnam is precluded by collateral estoppel from re-arguing those issues that the Court decided in *Maine State*.  The Court finds Putnam's claims deficient on other grounds, and so the Court declines to reach the question of collateral estoppel here.

[6] Throughout this Order "ECF No." generally refers to the docket for the particular case that the Court is discussing in that Section.  Exceptions to this general rule are noted by indicating the case name before "ECF No."

*American Pipe*, 414 U.S. at 550.  The Supreme Court held that the statute of limitations was tolled for the period that the putative class action was pending as to litigants who later sought to intervene in the individual suit.  *Id.*  A successor case made clear that *American Pipe* tolling applies to all members of the purported class, not just potential intervenors.  *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350 (1983).  This Court has previously accepted the notion that *American Pipe* tolling applies to statutes of repose as well as limitations.  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010) ("*Maine State I*").

American Pipe and its progeny preserve efficiency by eliminating the need for every potential class member to protect its claim by filing a separate case. *American Pipe*, 414 U.S. at 553–54; *Crown, Cork & Seal Co., Inc.*, 462 U.S. at 352.  This desire for efficiency is balanced against the risk that a party will seek to improperly extend a statute of repose by filing meritless placeholder lawsuits. *Maine State I*, 722 F. Supp. 2d at 1167.  This Court and others have achieved this balance by holding that *American Pipe* will only toll those claims that the named plaintiff in the original class action had standing to pursue.  *Maine State I*, 722 F. Supp. 2d at 1166–67 (collecting cases).  This holding is supported by *American Pipe* itself, which held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class *who would have been parties* had the suit been permitted to continue as a class action." 414 U.S. at 554 (emphasis added).  If the named plaintiff lacks standing to represent a particular plaintiff, then that plaintiff would not have been a party to the class action, and *American Pipe* does not toll that plaintiff's claims.

Putnam argues that its claims were tolled during a series of California state court actions that this Court refers to as the *Luther* class actions.  The first *Luther* action was filed in California state court on November 14, 2007 by plaintiff David

Luther.[7]  Another action was filed on June 12, 2008 by plaintiff Washington State Plumbing & Pipefitting Pension Trust.[8]  Luther amended his complaint on September 9, 2008 to add certain RMBS to the class definition, and the Luther and Washington State plaintiffs filed a consolidated and amended complaint on October 16, 2008.

None of the named plaintiffs in *Luther* had standing to pursue claims on behalf of purchasers of the eight Certificates at issue in this case.  That is because Sections 11 and 12(a)(2) of the Securities Act limit standing to those who have purchased a "security."  15 U.S.C. § 77k(a); 15 U.S.C. § 77l(a)(2).  And, each separate tranche of an Offering is a separate security with its own CUSIP, credit rating, interest rate, rights of distribution, credit-enhancement rights, and backing loans.  *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-cv-00302-MRP (MANx), 2011 WL 4389689, *5 (C.D. Cal. May 5, 2011) ("*Maine State III*").  The Court's tranche-based standing rulings are based on the fact that each tranche is a legally distinct security, but also on the economic reality that each tranche provides a fundamentally different balance of risk, terms, and interest rate.  Each tranche is evaluated and priced separately in order to allow investors to strike whatever balance between riskiness and interest rate the investors' particular needs dictate.  Differences between tranches and the myriad choices those differences offer investors are one of the principal advantages of securitization, and the Court cannot disregard those differences for purposes of standing.[9]

---

[7] *Luther v. Countrywide Home Loans Servicing LP*, BC380698 (Cal. Super. Ct. 2007).

[8] *Washington State Plumbing and Pipefitting Pension Fund Trust v. Countrywide Fin. Corp., et al.*, No. BC 392571 (Cal. Super. Ct. June 12, 2008).

[9] *See generally*, TAMAR FRANKEL, SECURITIZATION §§ 5.6–9 (2d ed. 2005) (discussing benefits of securitization); *Id.* § 8.3.1 (discussing tranche-based payment structures and their implications for investors); FINANCIAL CRISIS INQUIRY REPORT 43–44 (2011).

5

Rule 23 does not extend the jurisdiction of the federal courts. Filing a class action does not create standing, and a class may only be represented by a named plaintiff with standing. *Lierboe v. State Farm Mutual Automobile Ins. Co.*, 350 F.3d 1018, 1022-23 (9th Cir. 2003) (holding class action must be dismissed where named plaintiff lacks standing). No named plaintiff in *Luther* purchased any of the tranches that are involved in this case; those tranches therefore did not belong in *Luther* in the first place, and the pendency of *Luther* does not toll the statute of repose for purposes of those tranches. *Maine State III*, 2011 WL 4389689, at *5.

Plaintiffs, both here and in other cases, have objected that this rule is contrary to the purposes of *American Pipe*. Putnam frames the problem as one in which a plaintiff relied on a timely-filed class action, only to later find out that the class-action plaintiff lacked standing. According to Putnam, it reasonably believed that *Luther* would protect its interests, only to be ambushed by the Court's "entirely unforeseeable" decision that the *Luther* named plaintiffs lacked standing to pursue claims on behalf of any tranche that they did not purchase. Putnam Opp. at 15. Other plaintiffs have made related arguments. Each of them argues that the Court should protect the reasonable reliance interest of prospective plaintiffs by looking to the claims that the class action plaintiff asserted, rather than the claims that the class action plaintiff had standing to assert.

Some courts have adopted Putnam's view, but even those acknowledge that "[t]here may be circumstances where the representative so clearly lacks standing that no reasonable class member would have relied." *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137(LTS)(MHD), 2011 WL 4089580, *18 (S.D.N.Y. Sept. 15, 2011). Judge Browning of the District of New Mexico recently performed a comprehensive review of the MBS cases on this topic. He held:

> Given that the determination whether a plaintiff lacks standing based on his allegations is a fact-intensive inquiry, particularly in the area of

MBS, in which district courts have reached different results based on subtle distinctions, the putative class members should not have to predict how the Court would decide the standing issues.

*Genesee County Employees Ret. Sys. v. Thornburg Mortg. Secs. Trust 2006-3*, No. CIV 09–0300 JB/KBM, 2011 WL 5840482, at *64 (D.N.M. Nov. 12, 2011).

Both the plaintiffs in these cases and Judge Browning have identified a serious dilemma. In certain cases, where the standing of an original class action plaintiff is a matter of bona fide dispute, it may well be unfair to subsequently bar plaintiffs who reasonably-but-mistakenly relied on that plaintiff to represent their interests.[10] This is not such a case. Unlike the plaintiffs in *Genessee* or *Morgan Stanley*, no reasonable plaintiff could have thought that Luther had standing to pursue the claims in the *Luther* action.

The *Luther* action was brought in California state court. As such, the plaintiffs were not required to file a PSLRA certification explaining what securities they had purchased. 15 U.S.C. § 77z-1(a)(1) (PSLRA certification required when a claim is brought as class action pursuant to the Federal Rules of Civil Procedure). By the time that the *Luther* consolidated class action complaint was filed in October 2008, it purported to assert claims on behalf of a class of all parties who purchased any tranche within 427 Offerings. Defendants have pointed out that this amounts to thousands of individual securities with hundreds of billions of dollars in par value. Tr. at 35, ECF No. 142. Without a PSLRA certification to determine what the *Luther* plaintiffs had actually purchased, all that Putnam could have relied on is the bare assertion that the named *Luther* plaintiffs had "acquired Certificates

---

[10] The Court would still have to address the question of whether it even has constitutional authority to toll a claim in this circumstance. *See Palmer v. Stassinos*, 236 F.R.D. 460, 465 (N.D. Cal. 2006) ("[I]t would be beyond the constitutional power of a federal court to toll a period of limitations based on a claim that failed because the claimant had no power to bring it.").

pursuant and/or traceable to the Registration Statements and Prospectus Supplements." *Luther* Consolidated Complaint ¶¶ 23–29, CW RJN Ex. 74. It is not plausible that David Luther or the other *Luther* plaintiffs had purchased every one of the thousands of Certificates they purported to represent; that impossibility was borne out when the *Luther* plaintiffs finally revealed their purchases as part of the *Maine State* litigation.

Putnam objects that it could not have known that the *Luther* plaintiffs lacked standing until this Court issued its rulings in the *Maine State* case. Putnam Opp. at 18. That Putnam did not know what RMBS the *Luther* plaintiffs purchased only reinforces that no reasonable plaintiff would have believed that the *Luther* plaintiffs had standing to represent a class so enormous or to protect its claim. On the contrary, *Luther* is precisely the type of abusive placeholder lawsuit that has prompted many courts' concern about *American Pipe* tolling. Accordingly, the Court adopts its previous holding and finds that *American Pipe* tolling will only apply to those tranches that a *Luther* named plaintiff purchased. No *Luther* named plaintiff purchased any of the eight tranches in this case, and so the Court **DISMISSES** Putnam's 1933 Act claims as time-barred. Dismissal is as to **ALL DEFENDANTS** and is **WITH PREJUDICE**.

**B. PUTNAM'S EXCHANGE ACT AND CUSA CLAIMS ARE TIME-BARRED**

Putnam also alleges violations of the Exchange Act of 1934 and the Connecticut Uniform Securities Act ("CUSA"). These claims are subject to a two-year statute of limitations. 28 U.S.C. § 1658(b) (Exchange Act); CONN. GEN. STAT. § 36b-29(f). The federal statute begins to run on the date that Plaintiff either knew, or through the exercise of reasonable diligence should have known, "the facts constituting the violation." *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1798 (2010). Facts sufficient to establish scienter are among those that constitute the violation. *Id.* The CUSA statute of limitations is worded similarly to the federal statute and the Court will interpret it in the same fashion. *Capri v. Murphy*,

8

856 F.2d 473, 479 (2d Cir. 1988) (analyzing CUSA claim under federal law when the language of the CUSA cause of action was virtually identical to the Exchange Act).

The Putnam Complaint, like the complaints in earlier Countrywide RMBS cases *Stichting* and *Allstate*, alleges misrepresentations relating to (i) systematic abandonment of underwriting standards (Putnam Complaint ¶¶ 57–62); (ii) owner-occupancy statistics (Putnam Complaint ¶¶ 63–65); (iii) LTV ratios (Putnam Complaint ¶¶ 66–70); (iv) cherry-picking loans (Putnam Complaint ¶¶ 71–73); (v) loan documentation (Putnam Complaint ¶¶ 74–77); (vi) debt-to-income ratios (Putnam Complaint ¶¶ 77–79);  and (vii) credit ratings (Putnam Complaint ¶¶ 80–82).  These are the same allegations that the plaintiffs in *Stichting* and *Allstate* made.  *E.g. Stichting v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1135 (C.D. Cal. 2011) ("*Stichting*").  In *Allstate*, the Court held that a reasonable investor exercising reasonable diligence should have discovered facts sufficient to state every element of a 1934 Act claim based on these allegations by December 27, 2008.  *Allstate Ins. Co.  v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx), 2011 WL 5067128, at *15 (C.D. Cal. Oct. 21, 2011) ("*Allstate*").  December 27, 2008 is more than two years before the Putnam Complaint was filed; The allegations are substantively similar in this case and Putnam has not raised any argument that was not before the Court in *Allstate* or *Stichting*.[11]  Putnam's final argument that its Exchange Act and CUSA claims are entitled to *American Pipe* tolling is specious; the Exchange Act and CUSA claims involve fundamentally different elements and supporting facts from the Securities Act allegations in *Luther*.  The Court therefore reaches the same conclusion as in earlier cases.  The Court **DISMISSES** Putnam's Exchange Act and CUSA claims as time-barred.  Dismissal is as to **ALL DEFENDANTS** and is **WITH PREJUDICE**.

---

[11] Rather, Putnam "respectfully disagrees" with the Court's *Allstate* decision and adopts Allstate and Stichting's arguments in the earlier cases.  Putnam Opp. at 20.

Putnam's successor liability claim against Bank of America and related entities is dependent on a primary violation. Because Putnam's successor liability claim is entirely derivative of Putnam's dismissed primary liability claims, the successor liability claim is **DISMISSED WITH PREJUDICE** as well.

### IV. AMERICAN FIDELITY

**A. AMERICAN FIDELITY'S FEDERAL CLAIMS ARE TIME-BARRED**

Like Putnam, Plaintiff American Fidelity Assurance Company ("American Fidelity") asserts claims under the Securities Act, the Exchange Act, and state law in connection with its purchase of nine RMBS Certificates. The federal allegations are subject to the same three-year statute of repose (for the Securities Act claims) and two-year statute of limitations (for the Exchange Act claims). American Fidelity filed its complaint on April 1, 2011, two months after Putnam filed its complaint. ECF No. 1.

As in *Putnam*, each of the RMBS in this case was bona fide offered to the public more than three years before American Fidelity filed its complaint. American Fidelity concedes that no *Luther* named plaintiff purchased any of the RMBS in its case. The Court therefore **DISMISSES** American Fidelity's Section 11 claims for the same reasons set out in Section III.A above. Dismissal is as to **ALL DEFENDANTS** and is **WITH PREJUDICE**.

The repose period for American Fidelity's Section 12(a)(2) claims began to run on the "date of the sale." 15 U.S.C. § 77m. The "date of the sale" was prior to April 1, 2008 for seven of the nine Certificates at issue in this case. American Fidelity Amended Complaint ¶ 32. The Section 12(a)(2) claims are therefore barred under the statute of repose with respect to those Certificates. The Section 12(a)(2) claims are barred as to the remaining two Certificates both (i) because American Fidelity did not purchase them in the initial Offering and (ii) because the one-year statute of limitations under Section 13 would have begun to run well before April 1, 2010. The Court therefore **DISMISSES** American Fidelity's

Section 12(a)(2) claims as time-barred. Because American Fidelity's Section 15 claims are derivative of its Section 11 and 12(a)(2) claims, the Court **DISMISSES** them as well. Dismissal is as to **ALL DEFENDANTS** and is **WITH PREJUDICE**.

American Fidelity makes the same fundamental Exchange Act allegations as in *Putnam*,[12] and its complaint was filed several months later. The Court determines that those claims are time-barred for the same reasons set out in Section III.B above. The Court **DISMISSES** American Fidelity's Exchange Act claims as time-barred. Dismissal is as to **ALL DEFENDANTS** and is **WITH PREJUDICE**.

**B.     AMERICAN FIDELITY'S COMMON LAW CLAIMS ARE TIME-BARRED**

American Fidelity also asserts claims for common law fraud, aiding and abetting, and negligent misrepresentation. American Fidelity Amended Complaint. ¶¶ 409–32. American Fidelity filed its initial complaint in the Western District of

---

[12] American Fidelity asserts claims relating to underwriting exceptions and servicing quality that were not in *Putnam*. Both allegations were in the *Stichting* complaint that the Court found to be time-barred. *Stichting*, 802 F. Supp. 2d at 1135. The Court is careful to distinguish the servicing allegations in *American Fidelity* from the title transfer allegations that the Court discusses in the accompanying *Western and Southern* and *National Integrity* order. American Fidelity argues that it was harmed through the purchase of "far riskier than Countrywide had described them to be" RMBS. American Fidelity Amended Complaint ¶ 256. As it relates to the servicing allegations, American Fidelity's theory is apparently that poor servicing increased the risk of default by pushing delinquent borrowers into pricey repayment plans and failing to address their issuers. American Fidelity Amended Complaint ¶¶ 216–228. As in *Stichting*, the Court holds that a reasonable plaintiff exercising reasonable diligence should have discovered that claim (to the extent there was any factual basis for such a claim) before the Exchange Act cutoff date of April 1, 2009. As discussed more fully in the accompanying *Western and Southern* order, the title transfer allegations in *Western and Southern* and *National Integrity* allege a fundamentally different theory of harm.

11

Oklahoma. ECF No. 1. The Court therefore applies the substantive law of Oklahoma. *In re Nucorp Energy Secs. Litig.*, 772 F.2d 1486, 1491–92 (9th Cir. 1985). Oklahoma's two-year statute of limitations applies to American Fidelity's common law claims. 12 OKLA. STAT. ANN. § 95(A)(3). American Fidelity seems to concede that its common law claims are time-barred absent tolling. American Fidelity Opp. at 7–8. American Fidelity's sole argument for tolling is that *Luther* tolled American Fidelity's common law claims. *Id.* American Fidelity cites several cases indicating that Oklahoma has accepted class action tolling (e.g. *Brashears v. Sight 'N Sound Appliance Ctrs., Inc.*, 981 P.2d 1270, 1272 (Okla. Civ. App. 1999)), but no Oklahoma Court has ever approved of the type of cross-jurisdictional tolling that American Fidelity proposes. In *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008), the Ninth Circuit noted that the weight of authority was against cross-jurisdictional tolling and declined to import it into California law absent a clear statement from the California Supreme Court. In the absence of clear authority from the Oklahoma Supreme Court, the Court follows *Clemens* and declines to permit cross-jurisdictional tolling in this case. The Court therefore **DISMISSES** American Fidelity's common law claims. Dismissal is as to **ALL DEFENDANTS** and is **WITH PREJUDICE**.

Because American Fidelity's successor liability claim is entirely derivative of its dismissed primary liability claims, that claim is **DISMISSED WITH PREJUDICE** as well.

## V. BANKERS

Plaintiffs Bankers Insurance Company, Bankers Life Insurance Company, First Community Insurance Company, and Bankers Specialty Insurance Company (collectively "Bankers") allege violations of Florida state law in connection with their purchase of nineteen Certificates. Specifically, Bankers alleges fraud, fraudulent inducement, aiding and abetting fraud, and negligent misrepresentation.

12

Bankers' complaint was filed on July 22, 2011.  Defendants have moved to dismiss on the grounds that the claim is time-barred under California's three-year statute of limitations for fraud.

*Bankers* was initially filed in the Middle District of Florida.  The Court therefore applies Florida law, including Florida's choice-of-law rules.  *Nucorp*, 772 F.2d at 1492.  Florida has a four-year statute of limitations for actions that sound in both negligence and fraud.  FLA. STAT. §§ 95.11(3)(a); 95.11(3)(j).  Florida also has a borrowing statute, which provides:

> When a cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state.

FLA. STAT. § 95.10 (2011).  The parties dispute whether the cause of action arose in California or Florida.

Florida follows the "most significant relationship" test set out in the RESTATEMENT (SECOND) CONFLICT OF LAWS.  *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1115 (Fla. 1987).  Section 145 of the Restatement sets out the "most significant relationship" test for tort actions generally.  It lists four factors:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145.

Section 148 lists additional factors that are peculiar to fraud and misrepresentation claims.  It provides, in part:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were

13

made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 148.

The Court considers § 145 and § 148 together, as the contacts discussed in each overlap and inform each other. *See Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1191 (S.D. Fla. 2007). Because the factors listed in § 148 are specific to the fraud context and are a more detailed expression of the factors in § 145, the Court will focus its discussion on § 148. The Court will not "simply add up the factors and then apply the law of the sovereign with the greatest numerical total." *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1569 (11th Cir. 1990). Rather, the factors are a tool to determine the ultimate question of which state has the "most significant relationship." *Id.* The comments to the Restatement provide guidance as to how the Court should weigh the factors. *Valentino v. Bond*, No. 3:06cv504/MCR, 2008 WL 3889603, at *4 (N.D. Fla. Aug. 19, 2008). Comment j to § 148 provides that, "If any two of the above-mentioned contacts, apart from the

14

defendant's domicil, state of incorporation or place of business, are located wholly in a single state, this will usually be the state of the applicable law with respect to most issues."

Three of the four Bankers entities are incorporated in Florida and have their principal place of business there. Bankers Complaint ¶¶ 18–20. The fourth, Bankers Specialty Insurance Company, is incorporated in Louisiana and has its principal place of business there. Bankers represents that the evaluation and purchase of all of the Certificates that it purchased was conducted solely in Florida. Bankers Opp. at 17. The Bankers Complaint does not state where the various Bankers entities read the Offering Documents or made their purchase decisions. Nevertheless, the fact that three of the four plaintiffs are headquartered and incorporated in Florida, that these three plaintiffs represent the vast majority of the Certificates in the *Bankers* case, and that the fourth is a subsidiary of a Florida corporation, all lead the Court to conclude, at this preliminary stage of the proceedings, that Bankers' actions in reliance occurred in Florida. See *Topp*, 483 F. Supp. at 1192 ("The Court assumes that because Topp's operations are centered in Florida, the place where it performed these acts in reliance was in Florida."). The Court concludes that Florida is the site of Bankers' injury for largely the same reasons. *Id.* ("It appears to the Court that with all of the operations and personnel Topp has in Florida, that majority of the injury necessarily occurred in Florida.").

Factor (c) favors the application of California law. The Offering Materials were apparently "negotiated, approved, and issued" in California. CW Mot. at 55. However, the Offering Materials were disseminated widely for consumption by prospective RMBS purchasers worldwide. The representations may have originated in California, but they were "made" on a much larger stage. The Court therefore finds that factor (c) only loosely favors California law. Defendants object that Countrywide's entire mortgage securitization operation was run out of California and that the alleged scheme is California-centric. CW Mot. at 55. They

15

are correct, but a fraud case revolves around misrepresentations, not the underlying conduct.  The alleged misrepresentations appeared in publicly filed and nationally disseminated Offering Documents.  The alleged misrepresentations therefore have only a weak connection to California.

Factor (d) concerns the "domicil, residence, nationality, place of incorporation and place of business of the parties."  RESTATEMENT (SECOND) CONFLICT OF LAWS § 148(2)(d).  CFC is a Delaware corporation with its principal place of business in California.  CHC is a New York corporation with its principal place of business in California.  Countrywide Home Loans Servicing LP is a Texas LLP with its principal place of business in Texas.  CSC and CCM are California corporations with their principal places of business in California.  The Depositor Defendants are Delaware corporations with their principal places of business in California.  Three of the Bankers entities are located in Florida, one in Louisiana.  This factor is either evenly weighted or slightly favors Florida because three of the Bankers entities are both incorporated and located in Florida.  By contrast, several of the Defendants are located in one state but incorporated in another.

Factors (e) and (f) are not applicable in this case and the Court accords them no weight.

Comment (j) to § 148 instructs that, "when the plaintiff acted in reliance upon the defendant's representations in a single state, this state will usually be the state of the applicable law, with respect to most issues, if (a) the defendant's representations were received by the plaintiff in this state, or (b) this state is the state of the plaintiff's domicil or principal place of business."  RESTATEMENT (SECOND) CONFLICT OF LAWS § 148 (cmt j).  Here, Florida is the state where Bankers received the alleged misrepresentations, the state where Bankers apparently acted in reliance thereon, and the state where Bankers has its principal place of business and is incorporated.  The cause of action therefore arose in Florida for purposes of the Florida borrowing statute.

Florida's four-year statute of limitations applies to Bankers' claims. Defendants have not argued that Bankers' claims are untimely under Florida's statute of limitations, and the Court declines to so-find. The Court therefore **DENIES** Defendants' motions to dismiss the *Bankers* case.

## VI.    STERLING BANK

Plaintiff Sterling Federal Bank, F.S.B. ("Sterling") filed its complaint in the Northern District of Illinois on March 23, 2011. Like Bankers, Sterling alleges fraud, fraudulent inducement, aiding and abetting fraud, and negligent misrepresentation in connection with Sterling's purchase of Countrywide-issued RMBS. Sterling purchased four Certificates between 2004 and 2006. Sterling Complaint ¶ 6. Defendants have moved to dismiss on the grounds that the claims are time-barred under both Illinois and California law.

Because the case was transferred from Illinois, the Court applies the substantive law of Illinois, including Illinois choice of law rules. The parties agree that claims as to three of the four Certificates in this case are time-barred under the Illinois Securities Law ("ISL"). Defendants argue that the fourth is time-barred under both the ISL and California law as applied through Illinois' borrowing statute. Plaintiffs argue that the Illinois borrowing statute does not come into play in this case because both because Sterling is an Illinois resident and because Illinois has the "most significant relationship" with the claims in this case.

The ISL provides a three-year statute of limitations that begins to run on the date of sale. 815 ILL. COMP. STAT. 5/13(D). The statute contains an equitable tolling provision so that if the plaintiff did not know of the violation, the three-year period begins on "the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act." 815 ILL. COMP. STAT. 5/13(D)(2). The ISL also contains a five-year statute of repose that begins to run on the date of sale. *Id.*

Sterling purchased three of the four Certificates more than five years before March 23, 2011. Sterling Complaint at ¶ 6. Sterling does not contest that claims as to these three Certificates are time-barred and must be dismissed. Sterling Opp. at 3. Sterling purchased the remaining Certificate, 2006-26CB A19, on November 6, 2006. The claims for this Certificate therefore fall within the ISL's five-year statute of repose, but outside of its three-year statute of limitations. Sterling therefore argues that it is entitled to the equitable tolling exception in 815 ILL. COMP. STAT. 5/13(D)(2).

In *Allstate I*, the Court considered a very similar motion to dismiss under the ISL's three-year statute of limitations. There, the Court declined to dismiss Allstate's claims because (i) it was not clear that Allstate was on inquiry notice by December 27, 2007 and (ii) the Court interpreted Section 13(D) as requiring actual knowledge of *some* facts that should have triggered an investigation. *Allstate I*, 2011 WL 5067128, at *14. Only the second factor is relevant in this case, as the Court has held that Countrywide RMBS plaintiffs were on inquiry notice by February 14, 2008. *Stichting*, 802 F. Supp. 2d at 1140.

The Court takes this opportunity to briefly clarify the notice standard articulated in *Allstate I*, but it reaches the same result. Section 13(D) states that the limitation period begins to run on, "the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation." Reasonable diligence modifies the actual knowledge requirement in the second half, but not the notice requirement in the first half. This leads the Court to understand that Sterling need not have exercised reasonable diligence in obtaining notice of facts that should have triggered an investigation. Information that was sent to Sterling or that Sterling was aware of will constitute notice, whereas information that was widely reported in the press but never seen by Sterling will not suffice. This standard is different from actual knowledge, and the Court should have used the term "actual notice"

instead of "actual knowledge" in its *Allstate I* order.  Whether Sterling had actual notice of facts that should have triggered an investigation before March 22, 2008 is a factual question that is inappropriate for disposition at the motion to dismiss stage.

Defendants also argue that California's statute of limitations applies through the application of Illinois' borrowing statute.  That statute provides:

> When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State.

735 ILL. COMP. STAT. 5/13-210 (2010).  Illinois applies a judicially-created rule that the borrowing statute may only be applied when no party resides in Illinois. *Miller v. Lockett*, 98 Ill.2d 478, 481–83 (1983).  Sterling is a federal savings bank chartered under the laws of the United States.  Sterling Complaint ¶ 19.  "For purposes of the Illinois borrowing statute, a corporation is considered a resident only of the state in which it is incorporated; it is not considered a resident of the state in which it has its principal place of business or the state where it is licensed to do business." *Employers Ins. of Wausau*, 723 N.E.2d 687, 693 (Ill. App. 1 Dist. 1999) (citing *Ko v. Eljer Industries, Inc.*, 287 Ill.App.3d 35, 42 (1997)).  Sterling is therefore not an Illinois resident for purposes of the borrowing statute, and the Court must determine whether the cause of action "accrued" in Illinois or California.

Illinois courts apply the same Restatement "significant relationship" test that the Court addressed in Section V with respect to *Bankers*.  As a federal savings bank chartered under federal law, Sterling has a slightly weaker connection with Illinois than Bankers had with Florida.  Nevertheless, Sterling's principal place of business is in Illinois.  Sterling Complaint ¶ 19.  The Court therefore assumes, for purposes of this motion, that Sterling received the representations in Illinois, took

action in reliance on them in Illinois, and suffered damage in Illinois.[13]  The Court therefore finds that the *Sterling* action accrued in Illinois for purposes of the borrowing statute.  Sterling's claims as to 2006-26CB A19 are timely.  Sterling's claims as to its other three Certificates are untimely and are barred by the statute of repose.  Accordingly, the Court **DISMISSES** Sterling's claims except as they relate to 2006-26CB A19.  Dismissal is as to **ALL DEFENDANTS** and is **WITH PREJUDICE**.  The Court otherwise **DENIES** Defendants' motions.

## VII.    SEALINK

Plaintiff Sealink Funding Limited ("Sealink") filed its complaint in New York state court on September 29, 2011.  ECF No. 1.  It was removed to federal court on October 6, 2011 (*id.*) and transferred to this Court as part of the MDL on October 27, 2011.  ECF No. 6.  Sealink alleges common law fraud, fraudulent inducement, aiding and abetting, and negligent misrepresentation in connection with two SPV's purchase of 31 Countrywide-issued RMBS.  Sealink further alleges successor liability against three Bank of America entities.  The two SPVs are incorporated in Ireland and were originally sponsored by Sachsen LB ("Sachsen"), a former German "Landesbank."  When Sachsen failed in 2008, it was taken over by another Landesbank pursuant to a bank pooling agreement amongst the various German Landesbanks.  CW Mot. at 68.  As part of the takeover, the two SPVs sold their assets to Sealink.  Sealink Opp. at 5.  Specifically, the SPVs executed a series of Sale and Purchase Agreements (the

---

[13] Defendants object that the Sterling Complaint contains no specific allegations as to where Sterling received, relied upon, or was injured by the representations.  CW Mot. at 65 n.69.  Defendants further object that intermediaries located in other states may have been involved.  *Id.*  Defendants' arguments are pure speculation at this point.  The Court makes the reasonable inference in favor of Sterling that it received, relied upon, and was injured by Defendants' representations at its principal place of business.  Should Defendants unearth any facts that call this inference into doubt, they may again raise the issue at summary judgment.

"SPAs") that transferred a number of assets to Sealink. Millar Declaration at 2. The SPAs define the assets to be transferred as "each of the assets listed in Schedule 1." *Id.* Each of the SPAs in turn includes a schedule that lists a number of securities by issuer and ISIN. *Id.* The Master Framework and Definitions Schedule for the SPAs defines "assets" as "present and future properties, revenues and rights of every description." *Id.*

Sealink financed its purchases by obtaining approximately €15.8 billion in loans from various German banks. Sealink Opp. at 5. As part of the financing arrangement, Sealink apparently purchased a "guarantee" from the Free State of Saxony. *Id.* Under the terms of the guarantee, the Free State of Saxony will make good up to €2.75 billion in actual payment defaults incurred by Sealink's MBS portfolio. *Id.* at 5–6. Defendants have moved to dismiss Sealink's claims on the grounds that Sealink lacks standing and that its claims are time-barred under German law.

### A. STANDING

For federal jurisdiction to attach, a plaintiff must demonstrate that it has suffered an "injury in fact" that is "fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Defendants argue that the guarantee by the Free State of Saxony shields Sealink from incurring any possible losses on its Countrywide-issued RMBS, and therefore precludes any finding of injury.

*1.	The Guarantee Is Not Relevant to Whether the SPVs Had Standing*

Sealink claims that the two SPVs assigned their claims relating to the 31 Certificates-at-issue to Sealink. Sealink Opp. at 7. The SPAs are far from clear on this point, but the Defendants have not challenged the SPVs' assignment of claims for purposes of this motion. CW Reply at 53 ("Even assuming that the SPVs have assigned their claims to Sealink . . . .). The Court likewise assumes that the SPVs validly assigned their claims for purposes of this motion. The Court therefore

21

analyzes whether the assignors, i.e. the SPVs, have articulated an Article III injury. *Sprint Commc'n Co. v. APCC Serv., Inc.*, 554 U.S. 269, 289 (2008) (holding that assignee aggregators stepped into the shoes of assignors and therefore had standing to pursue claims).

Sealink alleges that it has suffered harm because the Certificates "are no longer marketable or salable at the prices paid for them by Sealink." Sealink Complaint ¶ 119. "Sealink" is a defined term in the Sealink Complaint that refers to Sealink and the SPVs collectively, but the Court cannot treat Sealink and the SPVs as the same entity. Sealink has alleged that the SPVs' 2005-2007 purchases were tainted by fraud. Sealink did not purchase the Certificates from the SPVs until 2008; it has not argued that those 2008 purchases were tainted by fraud, but rather that its standing is derivative of the SPVs'. Accordingly, the Court analyzes the SPVs' standing rather than Sealink's. The SPVs sold their interest in the Certificates in 2008. Any possibility of the SPVs' injury ended with that sale.

Defendants' discussion of the guarantee provided by the Free State of Saxony is beside the point for three reasons. First, the guarantee is to Sealink, not the SPVs. But whether Sealink suffers any loss is immaterial. *See Sprint*, 554 U.S. at 289 (aggregators have standing to bring claims even when they had suffered no injury). Second, the guarantee did not arise until 2008, *after* the SPVs sold the Certificates and therefore would have incurred any injury. Finally, even if the Court were to conflate Sealink and the SPVs, Sealink states that it "*pays* the Free State of Saxony" for the guarantee. Sealink Opp. at 5 (emphasis added). Even if Sealink is immunized from payment defaults, it may have been injured by having had to pay for a guarantee that it would not otherwise have needed.

2. *Sealink Has Not Alleged Any Injury to the SPVs*

In addition to addressing the arguments raised by Defendants, the Court has an "independent obligation to assure that standing exists." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986). The Sealink Complaint makes the

standing inquiry needlessly opaque by conflating Sealink and the SPVs. Sealink Complaint ¶ 12 ("Sealink Funding Limited and the SPVs are hereinafter collectively referred to as 'Sealink.'"). But, the SPVs are not bringing suit, Sealink is. Sealink must therefore have standing. The Court does not understand Sealink to argue that it has standing on its own behalf, but rather to "stand[] in the shoes of the injured SPVs." Sealink Opp. at 6. However, nothing in the record supports any inference that the SPVs suffered a legally cognizable injury. The Sealink Complaint does not allege that any Certificate failed to make a payment before June 2008. Sealink Complaint ¶¶ 119–120 (discussing theory of harm). And, the asset purchase agreements seem to indicate that the SPVs received full value for the Certificates. *E.g.* Miller Declaration, Ex. A ("'Asset Purchase Price' means, in relation to an Asset, the Original Acquisition Price multiplied by the outstanding nominal amount of such Asset . . ."). Accordingly, the Court **DISMISSES** the Sealink Complaint for lack of standing. Dismissal is **WITHOUT PREJUDICE**. If Sealink elects to replead, it must either explain how it has standing to sue on its own behalf or explain (i) on what basis it argues that the SPVs assigned it their legal rights and (ii) on what basis it argues that the SPVs have suffered an injury. Sealink's amended pleading may not conflate Sealink and the SPVs, but must very clearly delineate the rights, actions taken in reliance, and purported injury of each.

Because it has dismissed the Sealink action on the basis of standing, the Court declines to reach Defendants' arguments regarding choice of law and the timeliness of Sealink's claims.

### VIII.   CONCLUSION

For the reasons discussed above, the Court **DISMISSES** *Putnam* and *American Fidelity* as time-barred. Dismissal is **WITH PREJUDICE**. The Court **DISMISSES** *Sealink* for lack of standing. Dismissal is **WITHOUT PREJUDICE**. The Court **DISMISSES** *Sterling* except for the claims relating to 2006-26CB A19. The Court otherwise **DENIES** Defendants' motions to dismiss.

23

If the Court has dismissed claims without prejudice, the affected plaintiffs have leave to file amended complaints within **20** days of this Order.

**IT IS SO ORDERED.**

DATED:  March  9, 2012

Hon. Mariana R. Pfaelzer

United States District Judge